IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| MICHELLE KINDOLL<br>c/o Gerhardstein & Branch Co. LPA<br>441 Vine Street, Suite 3400<br>Cincinnati, OH 45202<br><br>     Plaintiff,<br><br>  v.<br><br>SOUTHERN HEALTH PARTNERS, INC<br>c/o C.T. Corporation System<br>306 W. Main Street<br>Suite 512<br>Frankfort, KY 40601<br><br>and<br><br>DAVID WATKINS<br>DAVID ROSS<br>DEBBIE PRESTON<br>c/o Grant County Detention Center<br>212 Barnes Road<br>Williamstown, KY 41097<br><br>and<br><br>GRANT COUNTY, KY<br>212 Barnes Road, Suite A<br>Williamstown, KY 41097,<br><br>and<br><br>CHRIS HANKINS<br>c/o Grant County Detention Center<br>212 Barnes Road<br>Williamstown, KY 4109<br>*Individually and in his official capacity as Jailer of the Grant County Detention Center,*<br><br>and | CASE NO:<br><br>JUDGE:<br><br>**COMPLAINT AND JURY DEMAND** |

1

| | |
|---|---|
| **DEDI MICHELLE ADAMS,** | : |
| **TAMMY BULLOCK,** | : |
| **JESSICA HELTON** | : |
| **WHITNEY JETT,** | : |
| **AUDRA ANN NAPIER** | : |
| **JANE AND JOHN DOE** | : |
| c/o Grant County Detention Center | : |
| 212 Barnes Road | : |
| Williamstown, KY 4109 | : |
| *Individually and in their official capacities* | : |
| *as employees of Grant County KY*, | : |
| | : |
| **Defendants.** | : |

## I. INTRODUCTION

1. This civil rights and medical malpractice action challenges Defendants' failure to provide adequate medical care to Michelle Kindoll while she was incarcerated at the Grant County Detention Center (Jail) in May 2016. Ms. Kindoll was admitted to the Jail on May 5, 2016 and began experiencing numbness in her leg and other stroke symptoms by at least May 18, 2016 but was not transferred to a hospital until three days later. Because of the delay, she suffered multiple strokes and now has serious permanent injuries. Defendants did not monitor her symptoms and failed to adequately treat Ms. Kindoll as her condition worsened. Plaintiff's injuries were foreseeable and preventable and they were the result of a healthcare system at the jail that was deemed unconstitutional repeatedly from 2009 to the present by the United States Department of Justice (DOJ). Plaintiff brings this action to secure fair compensation and hopefully encourage Defendants to provide appropriate treatment for future inmates suffering from stroke symptoms.

## II. JURISDICTION

2. Jurisdiction over the claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is

conferred by 28 U.S.C. § 1367. Venue is proper in this division.

### III. PARTIES

3. Plaintiff Michelle Kindoll is a resident of Kentucky and of this Judicial District.

4. Defendant Southern Health Partners, Inc., ("SHP") is a Delaware corporation registered to do business in Kentucky. At all times relevant to this case, SHP contracted with Defendant Grant County to provide medical care to the inmates of the Grant County Detention Center. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

5. Defendants David Watkins, David Ross, and Debbie Preston are, on information and belief, employees and/or agents of SHP or of Grant County, KY. Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. They are sued in their individual and official capacities.

6. Defendant Grant County, KY is a unit of local government established under the laws of the Commonwealth of Kentucky. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

7. Defendant Chris Hankins is and was at all times relevant to this action the duly elected Jailer of Grant County. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacities.

8. Defendant Dedi Michelle Adams, Tammy Bullock, Jessica Helton, Whitney Jett, Audra Ann Napier, and Jane and John Doe are employees of Grant County, KY, who were at all times relevant to this case, assigned to the jail. Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. They are sued in their individual and official capacities.

## IV. FACTS

**A. Michelle Kindoll's Traumatic Experience at the Grant County Detention Center**

9.     Prior to 2009, the United States Department of Justice investigated the Grant County Detention Center and concluded that the conditions of confinement, including the delivery of medical care, were unconstitutional.

10.    In 2009 Grant County and the DOJ entered into an agreement to remedy the unconstitutional conditions at the Jail.

11.    On several occasions in the subsequent seven years the DOJ inspected the Jail, reviewed records and interviewed inmates and staff.  Each time the DOJ found that the delivery of health care to inmates was below minimum constitutional standards.

12.    In fact, less than one month after the strokes suffered by Plaintiff in this case the DOJ reported that, "certain conditions in the Jail remain unconstitutional…the Jail's system for medical and mental healthcare remains inadequate to prevent harm or risk of serious harm to prisoners."

13.    On May 5, 2016, Michelle Kindoll was arrested for possession of heroin and booked into the Grant County Detention Center.

14.    She did not know that the health care services at this facility failed to meet minimum constitutional standards.

15.    Michelle was 43 and had worked cleaning houses at the time of her arrest.

16.    She previously had minimal contact with the criminal justice system.

17.    Michelle was addicted to heroin at the time of her arrest.

18.    She explained to the jail staff that she would be experiencing withdrawal and did in fact withdraw from heroin during her first few days at the jail.

19.    By at least May 18, 2016, Michelle started experiencing symptoms of a stroke.

20.     For at least three days she suffered numbness in her right leg, difficulty holding her eye open, overall weakness, inability to walk, memory loss, inability to talk and other symptoms.

21.     Defendants Bullock, Helton, Adams, Jett, Napier, and Does were corrections staff (CO defendants) at the Jail who interacted with Plaintiff between May 18 and May 21. During this period, they witnessed her stroke symptoms and allowed other inmates with no medical training to move her and adjust her in the cellblock, shower, and elsewhere.

22.     One of these CO defendants ordered Michelle to get up when she was too weak to stand. Michelle explained that she could not move.  That staff member callously stated that Michelle got down on the floor so she could get herself up.

23.     On May 19, Michelle knocked on the window of her cell to speak with defendant CO Helton about her medical condition.  CO Helton listened to Michelle complain about her leg, but then documented that by knocking on her door to talk about her medical condition, Michell "keeps hindering jail operations."

24.     On May 20, CO Jett witnessed Michelle fall on the way to the shower.  Jett then continued escorting Michelle to the shower as Michelle dragged her right leg behind her.  CO Jett did not notify medical of the fall.  CO Jett returned to the shower 20 minutes after leaving Michelle there and discovered Michelle on the ground wearing nothing but a shirt.  For the next forty minutes, defendant COs Jett and Napier ordered Michelle to get dressed despite her obvious inability to dress herself. They saw her flail her arms, fall from a chair to the floor, scoot across the floor into the hall half-naked, and look at them but not respond to questions. Despite witnessing this obviously bizarre behavior, COs Jett and Napier did not notify medical staff or call for EMTs. Only after watching her for forty minutes did they take her to see medical.

25.     During the three days when Michelle experienced stroke symptoms at the jail she incurred

bruises and other injuries due to the improper treatment by the CO defendants and the failure of these defendants to protect her from other inmates.

26.     Between May 18 and May 21 Michelle was also seen by defendants David Watkins, David Ross, and Debbie Preston (Defendant nurses).

27.     At no time while she was at the Jail was Michelle seen by or treated by a physician.

28.     The Defendant nurses did not consult with a physician about her symptoms.

29.     The symptoms suffered by the plaintiff during those three days were obvious indicators of a stroke, which is a serious medical need.

30.     The failure of the Defendant nurses to consult with a physician was consistent with the policy, practice and custom at the Jail of permitting nurses to deliver care unsupervised by a physician even though the need for supervision and higher level care was obvious.

31.     The failure of the Defendants to provide a physician to evaluate Plaintiff during her three days of suffering was due in part to the fact that the Jail had no physician medical director to ensure that staff was properly trained and supervised and that care was delivered consistent with established medical protocols.  This failure resulted in patients not being referred to the physician who did occasionally staff sick call at the facility.

32.     The DOJ had repeatedly noted that Defendants needed to appoint a physician medical director for this facility but it was never done.

33.     On May 21, after three days of suffering, Plaintiff was referred to St. Elizabeth Grant County Hospital.

34.     May 21 was a Saturday, and Michelle was sent to the hospital at approximately 2 a.m. Defendant nurse Watkins called ahead and was told that the hospital's CT machine was not working and they should send Michelle to Florence or Edgewood instead. Defendant Watkins

ignored the hospital's instructions and sent Michelle to St. Elizabeth Grant County.

35. Michelle was admitted to St. Elizabeth Grant County at 2:11 a.m., promptly assessed by a doctor, and at 2:30 a.m. put in an ambulance and transferred to St. Elizabeth Edgewood, which had a functioning CT machine.

36. Immediately before and/or shortly after her arrival at the hospital she suffered a series of cerebrovascular accidents (CVAs) and a serious stroke.

37. As a result of the CVAs she suffered, the Plaintiff has experienced unnecessary pain, escalating symptoms, more serious strokes, and physical bruises and injuries due to falls and mishandling by inmates and the Defendants at the Jail.

38. Following her discharge from the hospital, Plaintiff experienced a difficult period of rehabilitation and still suffers from memory loss, difficulty speaking, and serious mobility loss.

39. Had Michelle been assessed by a doctor and sent for treatment in a hospital soon after her symptoms emerged, she more likely than not would have been spared much pain, the escalating symptoms and serious permanent injury.

40. Defendants Watkins, Ross and Preston were routinely and improperly called upon to assess the health status of patients and were performing services beyond that legally authorized for persons at their levels of licensing.

41. Defendants Watkins, Ross and Preston acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical needs of Michelle Kindoll.

42. Defendants Bullock, Helton, Adams, Jett, Napier, and Does acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical and safety needs of Michelle Kindoll. They also failed to protect Plaintiff from injury

caused by other inmates.

**B.  Southern Health Partners, Inc., Jailer Chris Hankins, and Grant County's Inadequate Care and Inadequate Policies, Practices, and Culpable Conduct**

43.     At all times relevant to this case Southern Health Partners and Grant County were parties to a Health Services Agreement under which Southern Health Partners agreed to deliver "all medical, dental, and mental health services to inmates of [the] jail."

44.     Under the terms of that agreement SHP "shall provide medical and support personnel reasonably necessary for the rendering of health care services to inmates at the Jail."  Those personnel, including nurses, however, are described as "independent contractors" and SHP expressly claims that it "shall not exercise control over the manner or means by which these independent contractors perform their professional medical duties."

45.     Further, under the terms of that agreement the County reserved the right to request removal of any person delivering medical services.

46.     No jail medical director or jail physician is described in or expressly required by the contract.

47.     This lack of a medical director or jail physician caused nurses, including the nurse defendants in this case, to perform duties beyond those for which they were licensed and caused nurses to act without appropriate supervision and guidance from physicians while treating inmates including Michelle Kindoll at the Jail.

48.     Jailer Hankins, Grant County, and SHP policy makers had policies, practices, customs and usages that caused inmates to needlessly suffer stroke symptoms and receive inappropriate and delayed treatment in the Jail. Such policies were the moving force behind the injuries suffered by Ms. Kindoll. By following such policies Defendants were deliberately indifferent to the serious medical needs of Michelle Kindoll.

8

49.     Jailer Hankins, Grant County, and SHP policy makers were also deliberately indifferent to the serious medical needs of Michelle Kindoll by failing to train the medical staff and implement jail policies, practices, customs and usages that adequately addressed the obvious and known health and safety risks to inmates who experience stroke symptoms.

50.     Pursuant to the agreement with SHP, Defendants Grant County and Jailer Hankins, were to receive "monthly statistical reports relating to [medical] services" from SHP.  Grant County and Jailer Hankins could fire SHP medical staff under certain conditions.  Defendants Grant County and Jailer Hankins could terminate the agreement with SHP with or without cause.

51.     Defendants Grant County and Jailer Hankins had the responsibility and duty to monitor SHP's performance as a contractor and ensure that the inmates within the Grant County Jail were receiving adequate medical care.  Defendants Grant County and Jailer Hankins failed to do so.

52.     At the time of Plaintiff Kindoll's stroke symptoms, SHP had a pattern and practice of providing inadequate medical treatment to inmates at the Jail.  Defendants Grant County, Jailer Hankins, and SHP acted in concert in their callous disregard for the suffering of inmates with serious medical needs.  The treatment received by Michelle was consistent with the treatment afforded other inmates with serious medical needs including but not limited to those with stroke symptoms.

53.     Michelle's course of treatment was consistent with the treatment protocols authorized by SHP, Grant County, and Jailer Hankins, which displayed deliberate indifference to inmates like Michelle who suffered from serious medical needs including stroke symptoms.

54.     Jailer Hankins, Grant County and SHP knew that inmates at the Jail with serious medical needs were experiencing unnecessary suffering and these defendants were deliberately indifferent to their suffering.

55. Prior to the experience of Plaintiff Kindoll at the Jail, Defendant nurses and SHP agents were using an information sharing system among jail medical staff that was grossly ineffective. Electronic medical records were inconsistently kept and the DOJ recommended a return to paper records until the system could be fixed.

56. On information and belief, Patient medical files at the jail were not regularly reviewed by a physician or qualified health care practitioner and therefore patients were not properly referred for physician consults.

57. Prior to May 21, 2016, Defendants SHP, Grant County, and Jailer Hankins were deliberately indifferent to the serious medical needs of inmates at the jail including those with stroke symptoms. The medications, patient monitoring, protocols, staff supervision, and information sharing were all inadequate and those factors caused and were the moving force behind Plaintiff Kindoll's suffering and escalating and preventable strokes.

58. Defendants SHP, Grant County, and Jailer Hankins were deliberately indifferent to the serious medical needs of inmates with neurological and stroke symptoms in part by requiring and permitting Defendants Watkins, Ross, and Preston to routinely and inappropriately assess the health status of patients and otherwise perform services beyond that legally authorized pursuant to their licensing.

59. Defendants SHP, Jailer Hankins, and Grant County acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical needs of Michelle Kindoll and other patients suffering from serious medical conditions including neurological symptoms and stroke.

**F. Harm to Plaintiff**

60. As a direct and proximate result of Defendants' actions, Michelle Kindoll suffered

numbness, memory loss, trauma, permanent mobility loss, speech loss, emotional distress, other stroke symptoms and injuries, severe pain, escalating strokes, permanent injuries, and prolonged suffering.

## V.  FIRST CAUSE OF ACTION – 42 U.S.C § 1983

61. The Defendants have, under color of state law, deprived Michelle Kindoll of rights, privileges and immunities secured by the Fourteenth and Eighth Amendments to the U.S. Constitution including but not limited to the right to be free from cruel and unusual punishment, the right to be protected, and the right to adequate medical care when incarcerated.

62. Grant County, Jailer Hankins and SHP failed to adequately train and supervise the corrections and medical staff of the Grant County Detention Center in their assessment and treatment of inmates suffering from serious medical needs including neurological and stroke symptoms.

63. The rules, regulations, customs, policies and procedures of Grant County, the Grant County Jailer and SHP were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Michelle Kindoll.

## VI. SECOND CAUSE OF ACTION – MALPRACTICE BY NURSES

64. After Michele Kindoll was admitted to the care and custody of the Jail, Defendant Nurses David Watkins, David Ross, and Debbie Preston breached their duty to provide medical care to Ms. Kindoll consistent with standard medical practice, all in violation of Kentucky law.

65. The conduct of the Defendant nurses proximately caused Michelle Kindoll's injury, pain and suffering, emotional trauma, and permanent disability.

## VII. THIRD CAUSE OF ACTION – NEGLIGENCE BY SHP

66.     Defendant Southern Health Partners (SHP) and its employees and agents owed a duty of reasonable care to Michelle Kindoll.

67.     Defendant SHP had a duty to provide qualified personnel who were adequately trained and supervised to perform medical services at the Jail and a duty to use reasonable care in determining the qualifications and adequate performance of its contractors, agents and employees who provide medical services. Defendant SHP breached this duty.

68.     Defendant SHP had a duty to establish appropriate policies and procedures concerning the medical treatment of inmates at the Jail.  Defendant SHP breached this duty.

69.     Defendant SHP, their contractors, employees and agents breached their duty of care to Michelle Kindoll by failing to provide appropriate medical care and treatment under the circumstances.

70.     As a direct and proximate result of the negligence of SHP, Michelle Kindoll suffered injury, pain and suffering, emotional trauma, and permanent disability.

## VIII. FOURTH CAUSE OF ACTION - NEGLIGENCE BY JAIL EMPLOYEES

71.     Defendants Bullock, Helton, Adams, Jett, Napier, and Does breached their duty to provide medical care and to protect Ms. Kindoll from injury consistent with standard correctional practice, all in violation of Kentucky law.

## IX. JURY DEMAND

72. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

   A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B. Award punitive damages against all Defendants except the County in an amount to be shown at trial;

C. Award Plaintiff reasonable attorney's fees, costs and disbursements;

D. Award Plaintiff pre and post judgment interest;

E. Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully Submitted,

| | |
|---|---|
| s/ Alphonse A. Gerhardstein<br>Alphonse A. Gerhardstein<br>*Trial Attorney for Plaintiff Kindoll*<br>Adam G. Gerhardstein<br>Attorney for Plaintiffs<br>Gerhardstein & Branch, Co LPA<br>441 Vine Street, Suite 3400<br>Cincinnati, Ohio 45202<br>(513) 621-9100<br>Fax (513) 345-5543<br>agerhardstein@gbfirm.com<br>adamgerhardstein@gbfirm.com<br><br>*Attorneys for Plaintiff Michelle Kindoll* | /s/ Gary F. Franke<br>Gary F. Franke<br>Michael O'Neill<br>GARY F. FRANKE CO., L.P.A.<br>*Attorneys for Plaintiff Michelle Kindoll*<br>120 East 4th Street - Suite 1040<br>Cincinnati, Ohio 45202<br>(513) 564-9222<br>Fax (513) 564-9990<br>gff@garyfrankelaw.com<br>MDO@garyfrankelaw.com<br><br>Pro Hac Vice Motion Forthcoming<br><br>/s/ Donald L. Nageleisen<br>Donald L. Nageleisen, P.L.L.C.<br>*Attorney for Plaintiff Michelle Kindoll*<br>2216 Dixie Highway, Suite 200B<br>Ft. Mitchell, Kentucky 41017<br>(859)491-8887<br>Fax (859) 491-5544<br>dlnlegalmail@yahoo.com |