**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 17-84-DLB-CJS**

**MICHELLE KINDOLL**                                                                         **PLAINTIFF**

**v.**                                   **MEMORANDUM OPINION AND ORDER**

**SOUTHERN HEALTH PARTNERS, et**                                        **DEFENDANTS**

* * * * * * * * * * * * * *

## I.    INTRODUCTION

This case is a federal civil rights and state-law medical malpractice and negligence action arising from Defendants' alleged failure to provide adequate medical care to Plaintiff Michelle Kindoll after she suffered a stroke while incarcerated at the Grant County Detention Center (GCDC) in May 2016.   With discovery complete, four of the eight remaining Defendants—Southern Health Partners, Inc. (SHP), David Watkins, David Ross, and Debbie Preston (collectively the SHP Defendants)—now move to exclude the opinions of two of Plaintiff's expert witnesses, Donald Leach (Doc. # 81) and Lawrence Mendel, DO (Doc. # 82).   Neither party has requested a *Daubert* hearing, and the Court has determined that one is not necessary.   The Motions have been fully briefed and are now ripe for review.   (Docs. # 87, 88, 93 and 94).   For the reasons discussed below, the SHP Defendants' Motion to Exclude the Opinions of Donald Leach (Doc. # 81) is **GRANTED IN PART** and **DENIED IN PART**, and the SHP Defendants' Motion to Exclude the Opinions of Lawrence Mendel, DO (Doc. # 82) is **DENIED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts have been discussed in the Court's Memorandum Opinion and Order (Doc. # 103) adjudicating Defendants' dispositive motions, and will not be substantially repeated here.  Relevant to the Motions at hand, in the event this matter goes to trial, Plaintiff intends to call Donald Leach and Lawrence Mendel, DO, as expert witnesses.

Plaintiff's expert disclosure identified Mr. Leach as an expert in corrections, including jail administration, medical care, corrections policies, practices, customs, training, supervision, and incident investigations.  (Doc. # 59 at 1).  Mr. Leach has a Bachelor of General Studies in Social and Political Theory and a Doctorate in Public Administration.  (Doc. # 88-1 at 2).  Between 1996 and 2004, Mr. Leach served as the Deputy Director for the Division of Detention at the Fayette County Detention Center in Lexington, Kentucky.  (Doc. # 88-1 at 1).  With approximately twenty-four years of experience working in the field of corrections, Leach has experience in jail management including issues of security and operations as well as the provision of medical and mental health services.  *Id.*  Mr. Leach's testimony will address (1) whether "the Grant County policies, procedures, customs, and practices for delivering medical care and supervising the delivery of medical care to inmates" at the GCDC "in May 2016 [was] consistent with professional correctional standards for the delivery of health care in jails as expected by a reasonable correctional administrator," and (2) whether such "policies, procedures, customs, and practices cause[d] any injury to Michelle Kindoll."  (Docs. # 81-2 at 5 and 88-1 at 16).

Plaintiff's expert disclosure identified Dr. Mendel as an expert in providing medical services within a correctional setting, including the roles of LPNs, RNs, CNPs, and physicians, applicable standards of medical care, and general medicine. (Doc. # 59 at 1-2). Dr. Mendel is board certified in Family Practice, a Fellow of the American College of Correctional Physicians, and a Certified Correctional Healthcare Professional. (Doc. # 82-3 at 1). Dr. Mendel's testimony will address "whether the care and treatment rendered to Michelle Kindoll during her stay at the Grant County Detention Center deviated from acceptable standards of care in recognizing and treating stroke like symptoms and transporting Ms. Kindoll to a hospital where she could receive timely and appropriate treatment." *Id.*

Both Mr. Leach and Dr. Mendel have prepared written reports explaining their opinions in accordance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. (Docs. # 82-3 and 88-1). Likewise, both experts have been deposed. Mr. Leach was deposed on July 24, 2018 (Doc. # 88-3), and Dr. Mendel was deposed on August 16, 2018 (Doc. # 82-2).

III. **ANALYSIS**

A. **Standard of Review**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the witness meets four conditions. Fed. R. Evid. 702. First, "the expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Second, the expert's

testimony must be "based on sufficient facts or data." *Id.* Third, the expert's testimony must be "the product of reliable principles and methods." *Id.* Finally, the expert must have "reliably applied the principles and methods to the facts of the case." *Id.* In sum, expert testimony is admissible under Rule 702 if the expert is qualified, the testimony is reliable, and the evidence is relevant and helpful to the jury. *Scott v. Deerbrook Ins. Co.*, 714 F. Supp. 2d 670, 673 (E.D. Ky. 2010) (citing *United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997)). The decision to admit or exclude expert testimony "ultimately lies in a fact-intensive analysis that is particular to each circumstance and subject to the discretion of the trial court." *Scott*, 714 F. Supp. 2d at 673 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-51 (1999)). The proponent of the testimony bears the burden of establishing admissibility, which must be shown by a preponderance of the evidence. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

**B.    Motion to Exclude the Opinions of Donald Leach**

Plaintiff's expert disclosure identified Mr. Leach as an expert in corrections, including jail administration, medical care, corrections policies, practices, customs, training, supervision, and incident investigations. (Doc. # 59 at 1). The SHP Defendants do not challenge Leach's qualifications to offer opinions regarding their co-Defendants, Grant County, the GCDC Jailer Christopher Hankins, and his deputy jailers. (Doc. # 94 at 1). However, as to Leach's opinions regarding the SHP nurses who assessed Plaintiff at the GCDC—Defendants Debbie Preston, David Ross, and David Watkins—the SHP Defendants argue that Plaintiff is trying to bring in medical opinions under the guise of corrections opinions. *Id.* Defendants assert that, as a corrections expert with a doctoral degree in public administration, Leach is unqualified to provide medical opinions because

he "does not know the scope of practice for nurses in Kentucky and has no medical education, training, or experience upon which to evaluate whether the medical decisions made by the nurses involved in this case were reasonable."  (Doc. # 81-1 at 5-6).  Defendants argue, therefore, that a portion of Leach's testimony and opinions must be excluded because they are not based on Leach's "knowledge, skill, expertise, training or education" within the scope of Rule 702.  Further, the SHP Defendants argue that such opinions are speculative, not helpful to the trier of fact, "or are otherwise inadmissible under Federal Rules of Evidence 401, 402, and 403."  (Doc. # 81-1).

At his deposition, Leach conceded that he does not have the expertise and training to testify as to the opinions of an expert medical provider and that he has never been qualified as an expert to testify regarding whether a medical professional failed to meet the medical standard of care.  Rather, he has only testified as to "that which is expected by a reasonable correctional administrator."  (Doc. # 81-2 at 5).  Likewise, Leach admitted that the standard of care in how a nurse should or should not act under a set of particular circumstances is not within his expertise.  (Doc. # 81-2 at 6).

The SHP Defendants therefore conclude that any opinion Leach offered at trial "regarding whether the actions or inactions of Nurses Ross, Preston and Watkins were appropriate under the circumstances" would constitute improper standard-of-care opinion testimony.  (Doc. # 81-1 at 5).  Defendants argue that Mr. Leach's testimony and written report regarding the nurses' (1) alleged failure to provide an acceptable level of medical care at the GCDC, (2) failure to provide timely access to medical care, and (3) inappropriate nursing practices would also be improper opinion testimony.  (Doc. # 81-1 at 2).

Pointing to pages twenty-nine through thirty-six of Leach's expert report, the SHP Defendants object to six portions of Leach's report that they say contain six opinions that improperly go to the standard of care for the medical staff at GCDC. *See* (Docs. # 81-1 and 94) (citing Doc. # 81-2). The Court will address each opinion in turn.

### 1. Leach's opinion regarding the gatekeeping function of nursing staff at the GCDC is admissible.

First, the SHP Defendants object to Leach's opinion that the facility nurse practitioner or physician should have been more involved in Plaintiff's evaluation. Specifically, Defendants object to Leach's statements set forth in his report that (1) the Defendant nurses did not "escalate[] their assessment [of Plaintiff] to a more qualified provider . . . for evaluation and medical care decisions," and (2) that "with [a] greater primary care practitioner (such as Dr. Amos or [Nurse Practitioner] Roy Washington) on-site[,] supervision of the nursing staff could have identified the medical crisis Ms. Kindoll was experiencing." (Doc. # 81-3 at 1). Defendants argue that opinions about what the medical staff should have done—what a reasonable medical professional would do under the same or similar circumstances—are medical opinions that apply to the standard of care of medical staff, not of correctional staff.

In response, Plaintiff argues that the SHP Defendants' characterization of Leach's opinion is overstated. While Leach discusses the actions of the SHP nurses, Plaintiff asserts that Leach's opinion focuses upon the jail administrator's duty to ensure adequate provision of medical care. Leach's opinion regarding SHP focuses upon whether the medical services provided by SHP met SHP's commitments under its contract with Grant County, not whether the individual medical providers were meeting the applicable medical standard of care.

The record bears out Plaintiff's position.  *See Finn v. Warren Cty.*, No. 1:10-cv-16, 2012 WL 3067376, at *5 (W.D. Ky. July 27, 2012) (finding movant's claim that the report of the same expert, Donald Leach, contained inadmissible medical opinions to be "unsupported by a full and fair reading of the report").  In support of her municipal-liability claim, Plaintiff alleges that, due to an investigation conducted by the Department of Justice (DOJ), Jailer Christopher Hankins knew that medical staff at the GCDC had a history of improperly acting as gatekeepers to necessary care when inmates presented with acute medical conditions.  Leach identifies the nurses' failure to escalate their assessment to a more qualified provider as evidence that Jailer Hankins was failing to address the ongoing problem identified by the DOJ of nursing staff improperly acting as gatekeepers.  As Plaintiff points out, the fact that the correctional standard coincides with the medical standard does not transform Leach's opinion into a medical opinion.  (Doc. # 88 at 6).  The Court finds Leach to be sufficiently qualified as an expert in jail administration and his opinion on this issue of administrator oversight is admissible; accordingly, the SHP Defendants' motion to exclude on this basis is **denied**.

### 2. *Leach's summary of facts is not inadmissible as an improperly speculative medical opinion.*

Next, the SHP Defendants object to Leach's summary of some of the relevant facts in support of his opinion.  Specifically, the SHP Defendants object to Leach's statement that "LPN Ross considered Ms. Kindoll's condition to be significantly concerning [such] that he recommended placement into medical observation rather than returning [her to the] general population housing unit" but nonetheless "recommended no greater levels of observation to her [and] he failed to contact Dr. Amos or [Nurse Practitioner] Washington to report his assessment and obtain physician orders for care."  (Doc. # 81-3 at 2).

This factual statement simply does not opine on whether Defendant Ross complied with the applicable standard of care. It is a statement of fact that forms the basis for Leach's opinions, but it is not an opinion itself. The record shows that LPN Ross recommended placement of Plaintiff into an isolation cell for medical observation in lieu of returning her to a general-population cell. *See* (Doc. # 73-2 at 76-77). Likewise, the record shows that after assessing Plaintiff, Defendant Ross did not contact his supervisor, David Watkins, the facility's on-call Nurse Practitioner, Roy Washington, or the facility's on-call physician, Dr. Elton Amos. *Id.* at 86-87.

It is not the Court's role as gatekeeper to parse the language of expert reports to exclude any factual statements that are written persuasively. "Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his [or her] testimony, but where the opinion has a factual basis, it should not be excluded [because] it is up to opposing counsel to inquire into the expert's factual basis." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citing *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). *See also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("[M]ere weaknesses in the factual basis of an expert witness'[s] opinion . . . bear[s] on the weight of the evidence rather than on its admissibility"). Should Leach characterize the facts unfairly at trial, Defendants may turn to the "traditional and appropriate means" of attack, such as presentation of contrary evidence, vigorous cross-examination, or introduction of a limiting instruction.[1] *Powell v. Tosh*, 942 F. Supp. 2d

---

[1]     Defendants also argue that by purporting to describe Ross's "concern," (Doc. # 81-3 at 2), Leach was trying to characterize Ross's state of mind, which is improperly speculative. (Doc. # 94 at 5). The Western District of Kentucky rejected a similar state-of-mind argument in *Finn*, 2012 WL 3067376, at *3-4. Acknowledging that "[i]t is true that Leach cannot testify as to what any witness perceived," the *Finn* court explained that Leach's report merely opined on whether the jailers' actions were reasonable given their expected testimony. *Id.* at *4. Here, as in *Finn*, the SHP Defendants' characterizations overstate Leach's

678, 696 (W.D. Ky. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 596 (1993)). The Court finds these statements set forth in Leach's report to be sufficiently based on facts or data in the record; likewise, the Court finds these statements do not constitute impermissible medical opinions Leach is unqualified to make. Accordingly, the SHP Defendants' motion on these bases is **denied**.

### 3. Leach's factual summary of Defendant Preston's post-assessment communication does not constitute an inadmissible medical opinion.

The SHP Defendants next object to the statement set forth in Leach's report that "[w]hen LPN Preston assessed Ms. Kindoll on 5/19/2016, using assessment techniques for stroke, which would indicate that that was something she was considering possibly occurring, she did not pass on the assessment data to a more qualified medical professional." (Doc. # 81-3 at 4). Defendants' objection to this statement fails for many of the same reasons set forth *supra*. A fair reading of the report demonstrates that Leach is not professing to read Defendant Preston's mind or speculate about her motives; nor is he opining on Preston's performance of the stroke assessment. Rather, this is a factual statement regarding whether Defendant Preston communicated the fact of the stroke assessment to a physician; it concerns the same gatekeeper issue set forth *supra*. The Court finds Leach to be sufficiently qualified as an expert in jail administration to give his

---

opinion; a fair reading shows that Leach is merely describing Ross's expected testimony. The SHP Defendants similarly object to a sentence in Leach's report stating that "[t]here are no records of LPN Ross re-assessing Ms. Kindoll subsequent to her placement in the cell." (Doc. # 81-1 at 3) (citing Doc. # 81-3 at 3). This sentence is merely a statement of fact based upon Leach's review of the record; Defendants fail to demonstrate how such a statement constitutes testimony as to what any witness perceived or an opinion as to the standard of medical care. It is not outside of Leach's expertise to state that documentation did not exist on the record. Any issues with this factual statement may be addressed by cross-examination at trial or other "traditional and appropriate" means of attack. *Daubert*, 509 U.S. at 596.

opinion on this issue of administrator oversight. Accordingly, the SHP Defendants' motion to exclude on this basis is **denied**.

### 4. Leach's opinion that Watkins's actions prior to sending Plaintiff to the hospital were inappropriate constitutes an inadmissible medical opinion.

Next, the SHP Defendants object to the opinion in Leach's report that:

> [i]t is unacceptable that RN Watkins [chose] to call the local emergency room prior to initiating transport—the two are not mutually exclusive but should have occurred simultaneously. RN Watkins failed to provide Ms. Kindoll with timely access to the emergency medical care he identified she needed, rather he imposed his own judgment about whether the potential protocols that would have been employed at the hospital would have been beneficial.

(Doc. # 81-3 at 5). Leach's opinion regarding whether Watkins exercised appropriate judgment in choosing to call the local emergency room prior to initiating transport strays into the realm of the appropriate standard of care rather than merely acceptable correctional practices. As Leach himself testified during his deposition, he does not know the scope of practice for nurses in Kentucky and has no medical education, training, or experience upon which to evaluate whether the medical decisions made by the nurses involved in this case were reasonable. Leach is unqualified to opine on the appropriate standard of care and the SHP Defendants' motion to exclude on this basis is **granted**; accordingly, at trial Plaintiff is prohibited from eliciting testimony from Leach that "[i]t is unacceptable that RN Watkins [chose] to call the local emergency room prior to initiating transport," or that "RN Watkins failed to provide Ms. Kindoll with timely access to the emergency medical care he identified she needed, rather he imposed his own judgment about whether the potential protocols that would have been employed at the hospital would have been beneficial."

**5. Leach's opinion regarding Watkins's three-hour delay is admissible because it falls within the scope of Leach's expertise in jail administration.**

The SHP Defendants' penultimate objection to Leach's expert opinion points to the statement in Leach's report that "[t]here is no acceptable correctional explanation for RN Watkins['s] delay of 3 hours in sending out Ms. Kindoll after identifying her serious medical [need] and the possible existence of it transpiring over a period of days." (Doc. # 81-3 at 6). Defendants argue that "Mr. Leach is criticizing not the jail administration, but Nurse Watkins" and that "[i]mplicit in this criticism is that Nurse Watkins had a duty based on his medical evaluation of Ms. Kindoll to have her transported earlier." (Doc. # 94 at 4). Defendants insist that "[t]o reach this conclusion, Mr. Leach would have to know what the duties of a nurse under the same or similar circumstances would be," which is "beyond [Leach's] training and expertise." *Id.*

The SHP Defendants overstate the scope of Leach's opinion on this issue. The statement at issue qualifies that there is no *correctional* explanation for Watkins's delay. (Doc. # 81-3 at 6). The statement does not purport to opine whether there was an acceptable medical explanation. Should Leach imply something more at trial, the "traditional and appropriate means" of attack, such as presentation of contrary evidence, vigorous cross-examination, or introduction of a limiting instruction, are sufficient to address Defendants' objection. *Powell*, 942 F. Supp. 2d at 696. The Court finds that Leach's statement does not constitute an impermissible medical opinion that he is unqualified to make. Accordingly, the SHP Defendants' motion on this basis is **denied**.

**6.** ***Leach's opinion that Watkins failed to take timely action to address Plaintiff's serious medical needs constitutes an inadmissible medical opinion.***

The SHP Defendants' final objection concerns the opinion in Leach's expert report that "RN Watkins failed to take timely action to address Ms. Kindoll's serious medical needs." (Doc. # 81-3 at 7). The SHP Defendants also take issue with the subsequent statement that "[a]dditionally, RN Watkins failed to notify either of the jails' primary care providers—Dr. Amos or [Nurse Practitioner] Washington." *Id.*

The subsequent statement is properly admissible, as it is merely a factual statement supported by the record. *See* (Doc. # 73-3 at 30) (testifying that he did not consult with the other nurses regarding Plaintiff's condition, nor did he speak to Dr. Amos or Nurse Practitioner Washington prior to sending Plaintiff to the hospital). The Court finds this statement to be based on sufficient facts or data in the record; likewise, the Court finds it does not constitute an impermissible medical opinion Leach is unqualified to make. Accordingly, the SHP Defendants' motion to exclude is **denied** on this basis.

The Court agrees with the SHP Defendants, however, as to the first statement that "RN Watkins failed to take timely action to address Ms. Kindoll's serious medical needs." (Doc. # 81-3 at 7). Leach's opinion on this point amounts to an opinion that Defendant Watkins failed to act in accordance with the acceptable medical standard of care. By his own admission, Leach is unqualified to opine on the appropriate standard of care and the SHP Defendants' motion to exclude on this basis is **granted**; accordingly, at trial Plaintiff is prohibited from eliciting testimony from Leach that "RN Watkins failed to take timely action to address Ms. Kindoll's serious medical needs."

In sum, the Court agrees with two of the SHP Defendants' six objections to the admissibility of Plaintiff's jail-administration expert, Donald Leach. At trial Plaintiff is prohibited from eliciting testimony from Leach that:

> [i]t is unacceptable that RN Watkins [chose] to call the local emergency room prior to initiating transport—the two are not mutually exclusive but should have occurred simultaneously. RN Watkins failed to provide Ms. Kindoll with timely access to the emergency medical care he identified she needed, rather he imposed his own judgment about whether the potential protocols that would have been employed at the hospital would have been beneficial.

(Doc. # 81-3 at 5). Likewise, at trial Plaintiff is prohibited from eliciting testimony from Leach that "RN Watkins failed to take timely action to address Ms. Kindoll's serious medical needs." *Id.* at 7. As to their remaining objections to the opinions of Donald Leach, the Court **denies** the SHP Defendants' Motion. (Doc. # 81).

### C. Motion to Exclude the Opinions of Lawrence Mendel, DO

Plaintiff's expert disclosure identified Dr. Mendel as an expert in providing medical services within a correctional setting, including the roles of LPNs, RNs, CNPs, and physicians, applicable standards of medical care, and general medicine. (Doc. # 59 at 1-2). The SHP Defendants do not challenge Dr. Mendel's general qualifications to opine on whether the provision of medical care at the GCDC met the applicable standard of care. Rather, Defendants argue that Dr. Mendel should be excluded from testifying with respect to (1) Defendant SHP's alleged failure to train and supervise its employees, as well as (2) the SHP Defendants' alleged deviations from the standard of care prior to May 18, 2016. Defendants contend that Mendel's "testimony and opinions fail to comply with Federal Rule of Evidence 702 to be admissible expert testimony or are otherwise

inadmissible under Federal Rules of Evidence 401, 402, and 403." (Doc. # 82 at 1). The Court will address each argument in turn.

### 1. Dr. Mendel's testimony regarding SHP policies, procedures, and training is admissible.

The SHP Defendants first argue that Plaintiff should be barred from eliciting testimony from Dr. Mendel regarding SHP's policies, procedures, and training, because his opinion is not "based upon sufficient facts or data" within the scope of Rule 702(b) of the Federal Rules of Evidence. The Court disagrees. Dr. Mendel's opinion is tied to facts in the record; under these circumstances, Defendants' recourse is the "traditional and appropriate" means of attack identified in *Daubert*, 509 U.S. at 596, not exclusion.

Defendants object to the last page of Dr. Mendel's report, where he "made some very brief comments about SHP training." (Doc. # 82-2 at 2). Specifically, Dr. Mendel's report states:

> [T]here are multiple indications of systemic deficiencies including inadequate treatment of opiate withdrawal, failure to evaluate Michelle Kindoll for fever, failure to complete a Medical Assessment, and the failure of every nurse involved in her care to complete a stroke evaluation that met the standards for nurses or even non-medically trained laypersons. Records indicate that Nurse Preston was notified about Kindoll's stroke like symptoms on May 18, around 6:15 p.m. but that she was not evaluated until three hours later. Preston also admitted that she evaluated Kindoll on May 20 but failed to document her evaluation. The extent of these issues suggest inappropriate training and supervision on the part of SHP. SHP also apparently failed to provide specific guidance regarding the use of medical observation to assure that it was not used in lieu of hospitalization and that appropriate accommodations would be provided.

(Doc. # 82-3 at 10).

The SHP Defendants argue that Dr. Mendel's opinions regarding SHP's inadequate supervision and training should be excluded because he did not review all of

the SHP protocols or Defendants' training files prior to writing his report. Selectively pointing to deposition testimony that they assert shows Dr. Mendel "reviewed only a one-page stroke protocol created by SHP" in forming this opinion, the SHP Defendants argue that "Dr. Mendel's opinions regarding the training and supervision provided by SHP are not based upon sufficient data to be admissible [and] [t]hey are nothing more than pure speculation." (Doc. # 82-1 at 5) (citing Doc. # 82-2 at 2).

In ruling on motions to exclude expert testimony, "[t]he Court is mindful that its role as gatekeeper is not intended to serve as a replacement for the adversary system." *King v. Taylor*, 944 F. Supp. 2d 548, 552-53 (E.D. Ky. 2013) (internal citations omitted). "Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his [or her] testimony, but where the opinion has a factual basis, it should not be excluded [because] it is up to opposing counsel to inquire into the expert's factual basis." *In re Scrap Metal*, 527 F.3d at 530 (internal citations omitted). Rather than exclusion, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *King*, 944 F. Supp. 2d at 553 (citing *Daubert*, 509 U.S. at 596).

Here, the Court finds that Defendants' argument goes more to the weight than the admissibility of Dr. Mendel's testimony. The SHP Defendants' statement that Dr. Mendel "reviewed only a one-page stroke protocol" in forming his opinion is misleading. Dr. Mendel's report shows that he reviewed all of the witness depositions, including the deposition testimony of the Defendant nurses and SHP representative Shawnee Thoman; each testified regarding the training they received as well as the policies and protocols they followed as SHP employees. (Doc. # 82-3 at 2). Dr. Mendel also reviewed the

deposition exhibits, including the SHP Treatment Guidelines for a stroke. *Id.*
Furthermore, Dr. Mendel noted that his opinion on the inadequacy of the policies,
procedures, and training "is consistent with the issues identified by the DOJ audit." (Doc.
# 82-3 at 10). Because Dr. Mendel's opinion is grounded in fact, the Court will not
supplant the role of the adversary system; rather, the sufficiency of the facts upon which
Dr. Mendel based his opinion may be addressed by cross-examination at trial or other
"traditional and appropriate" means of attack. *Daubert*, 509 U.S. at 596. Accordingly,
Dr. Mendel's testimony is admissible and the SHP Defendants' motion to exclude on this
basis is **denied**.

> ## 2. Dr. Mendel's testimony regarding deviations from the standard of care prior to May 18, 2016, is admissible.

Finally, the SHP Defendants argue that Plaintiff should be barred from eliciting
testimony from Dr. Mendel regarding any deviations from the standard of care by SHP or
the Defendant nurses prior to the emergence of Plaintiff's stroke symptoms on May 18,
2016, because such testimony would be irrelevant and unduly prejudicial. The Court
disagrees.

In the context of expert testimony under Rule 702, expert testimony is relevant
when it "will help the trier of fact to understand the evidence or to determine a fact in
issue." Fed. R. Evid. 702(a). "In addition, the Court should be mindful of the definition of
relevance provided by [Rule] 401," that evidence is relevant if "(a) it has any tendency to
make a fact more or less probable than it would be without the evidence; and (b) the fact
is of consequence in determining the action." *King*, 944 F. Supp. 2d at 553 (citing Fed.
R. Evid. 401). "The Rules' basic standard of relevance is thus a liberal one." *King*, 944

F. Supp. 2d at 553 (citing *Daubert*, 509 U.S. at 587).  As a result, "the rejection of expert testimony is the exception rather than the rule."  *King*, 944 F. Supp. 2d at 553.

In support of their argument that Dr. Mendel's opinion regarding medical treatment prior to May 18, 2016 is irrelevant, the SHP Defendants point to Dr. Mendel's deposition testimony where he concedes that he does not believe any care provided prior to that date "caused the adverse outcome" and that "[t]o the best of [his] knowledge, it did not result in harm" to Plaintiff.  (Doc.# 82-1 at 2) (citing 82-2 at 1).  Because Dr. Mendel's testimony regarding treatment prior to that date does not relate to the medical cause of Plaintiff's stroke, the SHP Defendants assert that such testimony is not relevant.

The Court agrees with Plaintiff that the SHP Defendants view the scope of admissibility too narrowly in light of the liberal relevance standard.  (Doc. # 87 at 3-4).  While Dr. Mendel has conceded that treatment prior to May 18, 2016, did not directly cause Plaintiff's stroke, such testimony nonetheless provides relevant evidence that systemic deficiencies during Plaintiff's entire course of treatment caused her injuries. Plaintiff's medical treatment at the GCDC, even prior to the emergence of her stroke symptoms, is clearly relevant to the "policy or custom" giving rise to Plaintiff's municipal-liability claims against Grant County and SHP and supports Plaintiff's claim that the alleged deviation from the standard of care that gave rise to her stroke-related injuries was not an isolated incident.  Additionally, the alleged pattern of inadequate medical treatment not only goes directly to Plaintiff's constitutional claim pursuant to 42 U.S.C. § 1983, but also to her negligence claim against SHP.  Because Dr. Mendel's testimony concerning breaches of the standard of care prior to May 18, 2016 does help the trier of

fact determine a fact at issue, his testimony is relevant and the SHP Defendants' motion to exclude on this basis is **denied**.

Moreover, the SHP Defendants' argument that Dr. Mendel's opinion should be excluded pursuant to Rule 403 also fails. A court may exclude relevant evidence under Rule 403 if its probative value is "substantially outweighed" by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1999). The SHP Defendants have not shown how the probative value of this evidence is *substantially* outweighed by the 403 factors—particularly when the SHP Defendants implied that Plaintiff's withdrawal treatment prior to May 18, 2016 was evidence of quality medical care in support of their own dispositive motion. *See* (Doc. # 83-1 at 2) ("After four days, Plaintiff requested that she be taken off the detox protocol and placed in general population . . . [but] [d]espite her request, the medical staff at GCDC continued her on the protocol as a precaution"). Accordingly, because the probative value of evidence regarding the medical care the GCDC provided prior to May 18, 2016 is not substantially outweighed by unfair prejudice or confusion, Dr. Mendel's testimony is admissible, and the SHP Defendants' motion to exclude on this basis is **denied**.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)      The SHP Defendants' Motion to Exclude the Opinions of Donald Leach (Doc. # 81) is hereby **GRANTED IN PART** and **DENIED IN PART**; and

(2)      The SHP Defendants' Motion to Exclude the Opinions of Lawrence Mendel, DO (Doc. # 82) is hereby **DENIED**.

This 29th day of March, 2019.



Signed By:
*David L. Bunning*
United States District Judge