UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 17-84-DLB-CJS

MICHELLE KINDOLL                                                              PLAINTIFF

v.                              **MEMORANDUM ORDER**

SOUTHERN HEALTH PARTNERS, et                                          DEFENDANTS

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

This matter is before the Court on the Motion to Conduct Fact Discovery After Deadline filed by Defendants Grant County, Audra Napier, Tammy Bullock, and Christopher Hankins (the "County Defendants"). (Doc. # 101). Therein, the County Defendants seek leave to conduct the depositions of two former Grant County Detention Center ("GCDC") inmates who allegedly served as trustees charged with observing Plaintiff's condition while she was in an isolation cell on May 18, 2016, and May 19, 2016. *Id.* This matter has been fully briefed and is now ripe for review. (Docs. # 102 and 105). For the reasons set forth below, the County Defendants' Motion is **denied**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The underlying facts have been discussed in the Court's Memorandum Opinion and Order adjudicating Defendants' dispositive motions, *see* (Doc. # 103), and will not be substantially repeated here. Relevant to the Motion at hand, at the GCDC jailers used isolation cells for "medical watch" purposes such as keeping a closer eye on inmates undergoing withdrawal. (Docs. # 73-5 at 36 and 73-7 at 63). Inmate patients placed in isolation cells for "medical watch" were monitored more frequently; the jailer on shift was

1

required to look into the patient's cell every ten to fifteen minutes. (Docs. # 73-5 at 49-50, 73-11 at 33 and 73-12 at 50-51). The facility also arranged for inmate trustees to sit outside of "medical watch" cells to observe and report back to the jailers any changes in a patient's condition. (Docs. # 73-2 at 33-34 and 73-12 at 47-48).

Plaintiff's corrections expert, Donald Leach, testified that it is an appropriate correctional practice for trustees to be utilized this way in order to supplement the jailers' monitoring of inmates who are on "medical watch." (Doc. # 101-2 at 2, 5). It is undisputed that "[t]here are records of trustees watching Plaintiff while Plaintiff was in medical watch/isolation [with] the exception of May 18, 2016 and May 19, 2016." The County Defendants claim that "[t]he watches [on May 18th and May 19th] occurred but the records of the inmate watches performing during those crucial days were somehow inadvertently lost." (Doc. # 101-1 at 2). Mr. Leach "points to these lack of records as damning evidence that no watches were performed," which supports Plaintiff's constitutional claim and state-law negligence claim against the County Defendants. *See id.*

The County Defendants now seek to reopen discovery on the issue of whether trustees watched Plaintiff while she was in the isolation cell on May 18, 2016, and May 19, 2016, by taking the depositions of two former inmates who purportedly "performed a watch of Plaintiff during one of the days for which there are no records." (Doc. # 101-1 at 2). The County Defendants assert that they began to investigate the two inmates following Donald Leach's July 24, 2018 deposition, wherein he testified regarding the appropriate use of inmate trustees to supplement jailer monitoring as well as the lack of records on May 18, 2016, and May 19, 2016. (Docs. # 101-1 and 101-2). Without going into any specific details, the County Defendants assert that they have engaged in "diligent

2

and exhaustive efforts" to locate the two inmates. (Doc. # 101-1 at 2). The County Defendants indicate that they have located one of the former inmate trustees; however, as of April 1, 2019, they are still in the process of locating the second inmate trustee. (Docs. # 101 at 2 and 105 at 3).

The deadline to complete fact discovery expired on April 2, 2018. (Doc. # 33). Discovery has been closed for nearly eight months. The parties filed a Joint Status Report on August 16, 2018, reporting that discovery was complete and the parties were prepared to move forward with filing dispositive motions. (Doc. # 76). The County Defendants filed their dispositive motion on July 10, 2018, and the remaining Defendants filed their dispositive motion on August September 17, 2018. (Docs. # 62 and 83). The County Defendants then filed the instant Motion on March 15, 2019. (Doc. # 101). The Court adjudicated the dispositive motions on March 28, 2019, *see* (Doc. # 103), and the matter is now ready to be set for trial. Accordingly, the Court ordered the parties to file a Status Report by April 17, 2019, setting forth available dates for a Final Pretrial Conference and Jury Trial. *Id.* The County Defendants state that "[p]ermitting the depositions of the two witnesses may add a couple of months to the length of this litigation." (Doc. # 105 at 1).

## II. ANALYSIS

The Court has broad discretion over discovery matters. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999). This broad discretion applies to reopening discovery. *Lowe v. Hamilton Cty. Job & Family Servs.*, No. 1:05-cv-117, 2007 WL 1513823 (S.D. Ohio May 22, 2007). Accordingly, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (stating that district courts

have "broad discretion under the rules of civil procedure" in managing the discovery process and controlling their dockets). In determining whether a district court has abused its discretion in denying a motion to reopen discovery, the Sixth Circuit considers five factors: "(1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) the adverse party's responsiveness to prior discovery requests." *Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011) (internal citations omitted). "The overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Id.*

Here, the majority of the *Bentkowski* factors weigh against reopening discovery. The first factor—when the moving parties learned of the issue—weighs against Defendants. The issue of whether trustees were stationed outside Plaintiff's isolation cell during her incarceration at the GCDC came up on multiple occasions during fact discovery. Nurse David Ross's deposition—wherein he testified regarding the use of trustees to keep watch outside of cell doors at the GCDC—took place on December 18, 2017, nearly four months before the close of fact discovery. (Doc. # 73-2 at 34). Likewise, at the deposition of GCDC Deputy Tammy Bullock on January 9, 2018, Plaintiff's counsel elicited testimony that there was no record of Plaintiff being put on medical watch during the time period at issue. (Doc. # 73-11 at 28-31). Similarly, at the March 19, 2018 deposition of Jailer Christopher Hankins, Plaintiff's counsel drew attention to the fact that there was no supporting documentation to show that Plaintiff was placed on medical watch or that the trustees watched Plaintiff during the time period at issue. (Doc. # 73-7 at 60-62). Thus, the County Defendants had notice that they should seek out the trustees'

4

testimony prior to the expiration of the fact discovery deadline, and the first factor weighs against reopening discovery.

The second factor—how the discovery would affect the ruling below—weighs in favor of the County Defendants. Though the Court did not find it necessary to discuss the use of trustees in the adjudication of the Defendants' dispositive motions, an issue of material fact as to whether Deputy Bullock placed Plaintiff on medical watch as instructed by Nurse David Ross on May 18, 2016, did foreclose summary judgment as to Plaintiff's deliberate-indifference claim against Bullock pursuant to 42 U.S.C. § 1983. (Doc. # 103 at 33-35). The County Defendants claim that "[t]he subject witnesses are going to testify that the County Defendants actually did perform the subject [medical] watch" during the relevant time period.[1] (Doc. # 105 at 2). Thus, the second factor weighs in favor of reopening discovery.

The third factor—the length of the discovery period—weighs against the County Defendants. As the County Defendants concede, "[t]he parties have engaged in substantial discovery . . . over the previous two years." (Doc. # 105 at 2). The Court entered its Scheduling Order on August 23, 2017, (Doc. # 33), and agreed to an extension of time, extending the discovery deadline to August 1, 2018. (Doc. # 57). The parties have had a significant amount of time to conduct discovery and the Court has granted every extension of time Defendants have requested.

Moreover, the County Defendants concede that additional discovery would prolong already-protracted litigation. Defendants state—perhaps optimistically—that "[p]ermitting

---

[1] The Court has reason to question the veracity of this assertion when Defendants concede that they have not even located one of these witnesses. *See* (Doc. # 105 at 3) ("One of those witnesses has now been located, with the second, upon information and belief, to be located shortly.").

5

the depositions of the two witnesses may add a couple of months to the length of this litigation." (Doc. # 105 at 1). Nonetheless, Defendants admit that the second of the two witnesses Defendants seek to depose has yet to be located. *Id.* at 3. Tellingly, in their Reply the County Defendants also fail to vitiate the concern Plaintiff raised in her Response that "[f]ollowing the requested depositions . . . Defendants would presumably seek to file a new motion for summary judgment" which would further extend this litigation. (Doc. # 102 at 2-3). Thus, the third factor weighs against reopening discovery.

Likewise, the fourth factor weighs against the County Defendants, as they were not diligent in pursuing discovery on this issue. Defendants assert that they did not realize the importance of the trustees' testimony until expert Donald Leach's July 24, 2018, deposition—after the close of fact discovery. (Doc. # 105 at 3). However, the County Defendants fail to explain why they did not move to reopen fact discovery at that time and proceeded with filing their dispositive motion on July 10, 2018—two months prior to the dispositive motion deadline. (Docs. # 57 and 62). Indeed, the parties' Joint Status Report on August 16, 2018—which the parties filed after Leach's deposition—represented to the Court that discovery was complete and the parties were prepared to move forward with filing dispositive motions. (Doc. # 76).

Moreover, the County Defendants further fail to explain why they waited until March 15, 2019—approximately eight months after filing their dispositive motion and taking Leach's deposition—to file their subject Motion to reopen discovery or even bring this matter to the Court's attention. (Docs. # 62 and 101). Further, while the County Defendants assert that they have engaged in "diligent and exhaustive efforts" to locate the two inmates, *see* (Doc. # 101-1 at 2), they provide no evidence or specific details of

their efforts to support their averment of diligence. As of April 1, 2019, the County Defendants had only located one of the two inmate trustees they seek to depose. (Doc. # 105 at 3). Thus, the fourth factor weighs against reopening discovery.

Finally, the fifth factor—the adverse party's responsiveness to prior discovery requests—weighs against reopening discovery. The County Defendants make no assertions that it was Plaintiff's failure to provide timely responses to discovery requests that precipitated the asserted need to conduct additional discovery out of time.

Simply put, the County Defendants have failed to demonstrate good cause to reopen discovery at this late stage of the case. The majority of the factors identified by the Sixth Circuit in *Bentkowski* weigh against Defendants. Moreover, "[t]he overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Bentkowski*, 637 F.3d at 696. As set forth *supra*, the Court finds that the County Defendants have not demonstrated diligence in pursuing discovery on this issue. This matter is ready to be set for trial after a full and fair opportunity to conduct discovery, and continued discovery is not warranted under the circumstances.

## III. CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that the County Defendants' Motion to Conduct Fact Discovery After Deadline (Doc. # 101) is **DENIED**.

This 2nd day of April, 2019.



Signed By:
David L. Bunning
United States District Judge